13 Civ. 5749, *et al.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**AMKC LOCKDOWN CASES**
*(a full caption follows on the first interior page)*

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Kate McMahon*
*Tel: (212) 356-2649*
*Primary Matter No.: 2013-052554*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHADY BOLTON, *et al.*,

Plaintiffs, 13 Civ. 5749 (RJS)

ENRIQUE ROSADO,

Plaintiff, 13 Civ. 6340 (RJS)

ABUBAKR SANCHEZ,

Plaintiff, 13 Civ. 6624 (RJS)

JOSE SOTO,

Plaintiff, 13 Civ. 6843 (RJS)

WILLIAM TIRADO,

Plaintiff, 13 Civ. 7195 (RJS)

EDUARDO SANTANA,

Plaintiff, 13 Civ. 7659 (RJS)

- against -

CITY OF NEW YORK[1],

Defendant.

TASHON SPURGEON,

Plaintiff, 13 Civ. 6090 (RJS)

MARK GREEN,

Plaintiff, 13 Civ. 6259 (RJS)

-against-

WARDEN LUIS RIVERA, *et al.*,

Defendants.

---

[1] Although several of these Complaints list the New York City Department of Correction ("DOC") as a defendant, this Court has correctly noted that DOC is not a suable entity and that the proper defendant is the City of New York.

TERRON SESSION, *et al.*,

Plaintiffs, 12 Civ. 6348 (RJS)

-against-

COMMISSIONER, NYC DEPT CORR., DORA B. SCHRIRO; *et al.*,

Defendants.

----------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........ vi

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 1

STANDARD OF REVIEW ........ 3

ARGUMENT ........ 4

Point i ........ 4

PLAINTIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES PRIOR TO FILING THEIR SUITS, DESPITE BEING REQUIRED TO DO SO BY the PLRA. ........ 4

A. Administrative Remedies were Readily Available to Plaintiffs. ........ 6

B. Defendants are not Estopped from Asserting an Exhaustion Defense. ........ 9

C. There are no Special Circumstances Excusing Plaintiffs from the Exhaustion Requirement. ........ 9

CONCLUSION ........ 10

## TABLE OF AUTHORITIES

**Cases** **Pages**

Banks v. Mental Health Clinicians,
No. 11 Civ. 7848, 2012 U.S. Dist. LEXIS 176880 (S.D.N.Y. Dec. 11, 2012) .......... 7
Booth v. Churner,
532 U.S. 731 (2001) .......... 5
George v. Morrisson,
No. 06 Civ. 3188, 2007 U.S. Dist. LEXIS 42640 (S.D.N.Y. June 11, 2007) .......... 7
Ghee v. Ramos,
No. 13 Civ. 632, 2013 WL 7018543 (S.D.N.Y. Dec. 4, 2013) .......... 7
Giano v. Goord,
250 F.3d 146 (2d Cir. 2001) .......... 8
Hallett v. Davis,
No. 11 Civ. 4646, 2012 U.S. Dist. LEXIS 137819 (S.D.N.Y. Sept. 25, 2012) .......... 7
Hargrove v. Riley,
No. 04-CV-4587, 2007 U.S. Dist LEXIS 6899 (E.D.N.Y. Jan. 31, 2007) .......... 8, 10
Hemphill v. New York,
380 F.3d 680 (2d Cir. 2004) .......... 5
Hernandez v. Coffey,
No. 99 Civ. 11615, 2006 U.S. Dist. LEXIS 52066 (S.D.N.Y. July 26, 2006) .......... 9
Hill v. Curcione,
657 F.3d 116 (2d Cir. 2011) .......... 5
Martin v. City of New York,
No. 11 Civ. 600, 2012 U.S. Dist. LEXIS 56632 (S.D.N.Y. Apr. 19, 2012) .......... 8
Mojias v. Johnson,
351 F.3d 606 (2d Cir. 2003) .......... 6
Orta v. N.Y.C. Dep't of Corr.,
No. 01 Civ. 10997, 2003 U.S. Dist. LEXIS 2682 (S.D.N.Y. Feb. 25, 2003) .......... 5
Porter v. Nussle,
534 U.S. 516 (2002) .......... 5
Reuben v. N.Y.C. Dep't of Corr.,
No. 11 Civ. 378, 2011 U.S. Dist. LEXIS 122734 (S.D.N.Y. Oct. 18, 2011) .......... 6
Rivera v. Anna M. Kross Ctr.,
No. 10 Civ. 8696, 2012 U.S. Dist. LEXIS 15126 (S.D.N.Y. Feb. 7, 2012) .......... 7
Ruggiero v. Cnty. of Orange,
467 F.3d 170 (2d Cir. 2006) .......... 9
Shamel v. Agro,
No. 11 Civ. 9473, 2013 U.S. Dist. LEXIS 27336 (S.D.N.Y. Jan. 28, 2013) .......... 7
Shariff v. Coombe,
655 F. Supp. 2d 274 (S.D.N.Y. 2009) .......... 8
Woodford v. Ngo,
548 U.S. 81 (2006) .......... 5
Woodford. See Amador v. Andrews,
655 F.3d 89 (2d Cir. 2011) .......... 5

**Cases** **Pages**

**Statutes, Rules, & Regulations**

42 U.S.C. § 1997e(a)........................................................................................................ 4
42 U.S.C. §1983,.............................................................................................................. 1

## PRELIMINARY STATEMENT

Thirteen[2] *pro se* Plaintiffs bring these nine actions pursuant to 42 U.S.C. § 1983, alleging that the City of New York and/or employees of the New York City Department of Correction ("DOC") violated their constitutional rights owing to a "lockdown" at the Anna M. Kross Center ("AMKC") on Rikers Island, during which services ordinarily provided to them were curtailed. They seek a variety of damages, and, in some cases, injunctive relief.

On January 24, 2014, Defendants[3] moved to dismiss the Complaints on various grounds under Federal Rule of Civil Procedure 12(b)(6). On September 9, 2014, The Honorable Richard J. Sullivan denied Defendants' motion without prejudice, directing Defendants to file a Rule 56 motion for summary judgment on the issue of administrative exhaustion. Because the record is clear that Plaintiffs failed to exhaust their administrative remedies under the Prisoner Litigation Reform Act, and because there are no genuine issues of fact to be tried, the Court should now grant Defendants summary judgment as a matter of law.

## STATEMENT OF FACTS

Defendants respectfully refer the Court to Defendants' Local Civil Rule 56.1 Statement of Undisputed Material Facts, dated November 14, 2014 (hereinafter, "Defs' 56.1") for a statement of those material facts that are not in dispute and on which this motion is based. A summary is as follows:

Plaintiffs were each incarcerated at AMKC during July and August of 2013, and they filed their *pro se* lawsuits between August 2013 and October 2013. These cases fall into three separate categories: the *Bolton* cases, the *Spurgeon* cases, and the *Session* case.

---

[2] On December 20, 2013, six additional plaintiffs were dismissed from Session v. Schriro, Case No. 13-cv-6348.

[3] "Defendants" refers to all defendants who are properly suable and were timely served, specifically, the City of New York, Warden Luis Rivera, Deputy Hill, Deputy Margarita, Captain Blake, Correction Officer Lindo, Correction Officer Rothwell, Commissioner Dora B. Schriro, Deputy Warden Purvis, and Deputy Warden Collins.

The *Bolton* cases consist of six actions and eight Plaintiffs—Shady Bolton, Derrick Francis, Jonathan Groenow, Enrique Rosado, Abubakr Sanchez, Jose Soto, William Tirado, and Eduardo Santana. These Plaintiffs allege (in factually similar complaints) that their civil rights were violated during a lockdown at AMKC from July 31, 2013 through August 4, 2014. (Defs' 56.1 at ¶ 2). Plaintiff Sanchez alleges that he was denied use of the phone and shower, and that he was not provided with necessary medication due to the lockdown. (Id. at ¶ 4). The remaining *Bolton* Plaintiffs allege that they were denied use of the phone and shower, that the lockdown prevented them from accessing various services, and that they were forced to stay in their cells more than eight hours a night, in violation of DOC regulations. (Id. at ¶ 3). Sanchez admits that he had never filed a grievance at AMKC as of September 17, 2013 when he filed his lawsuit. (Id. at ¶ 15). The other *Bolton* plaintiffs allege that prior to filing their lawsuits between August 14, 2013 and October 29, 2013, they had only filed grievances at AMKC on the issue of being locked in their cells at 9 p.m. every night; they further allege that they never received any response to these grievances and never took any steps to appeal to a higher level of the grievance process before bringing their federal actions. (Id. at ¶ 14).

The *Spurgeon* cases consist of two identical actions brought independently by Tashon Spurgeon and Mark Green. Spurgeon and Greene allege that their civil rights were violated during three separate facility lockdowns at AMKC, from July 11, 2013 – July 15, 2013, July 16, 2013 – July 19, 2013, and July 31, 2013 – August 4, 2013, when they were prevented from accessing various services, subjected to unsanitary conditions, and denied medical attention and necessary medication. (Id. at ¶¶ 5-6). Spurgeon and Green each allege that while they filed grievances at AMKC related to the lockdown, they never received any response and never took

any steps to appeal to a higher level of the grievance process prior to filing their lawsuits on August 28, 2013 and September 5, 2013, respectively. (Id. at ¶ 17).

Finally, the *Session* case consists of one action brought by three plaintiffs—Terron Session, Ramel Williams, and Daquan Bowers. These plaintiffs allege that their civil rights were violated during facility lockdowns at AMKC from July 21, 2013 through July 28, 2013, when various services were restricted. Id. at ¶ 8. The Session plaintiffs never filed any grievances at AMKC prior to filing their lawsuit on September 10, 2013. Id. at ¶ 16.

## STANDARD OF REVIEW

To grant summary judgment, the court must determine that the record demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are material if they "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to relief. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In reviewing a motion for summary judgment against a non-moving, *pro se* plaintiff, courts "liberally construe pleadings and briefs submitted by *pro se* litigants, . . . reading such submissions to raise the strongest arguments they suggest." Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (quotation marks and citation omitted). Nonetheless, even a *pro se* plaintiff cannot defeat a motion for summary judgment by relying merely on the allegations in the complaint. See Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996). Rather, when confronted with evidence of facts that would support summary judgment, a plaintiff must come forward with evidence, in an admissible form, capable of refuting those facts. Fed. R. Civ. P.

56(e); Saldana v. Local 32B-32J Serv. Emps. Int'l Union, No. 03 Civ. 1853, 2005 U.S. Dist. LEXIS 464, at *4 (S.D.N.Y. Jan. 11, 2005) (citing, inter alia, Jermosen v. Coughlin, 877 F. Supp. 864, 867 (S.D.N.Y. 1999)). Once the moving party has made an initial showing that no genuine issue of material fact remains, the nonmoving party may not refute this showing solely by means of "[c]onclusory allegations, conjecture, and speculation," Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003). Instead, the nonmoving party must submit "sufficient evidence … upon which a reasonable jury could return a verdict for the nonmoving party." James v. Orange County Corr. Facility, No. 09 Civ. 7226 (CM), 2011 U.S. Dist. LEXIS 134560, at *9 (S.D.N.Y. Nov. 18, 2011) (citing Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997)).

## ARGUMENT

### POINT I

### PLAINTIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES PRIOR TO FILING THEIR SUITS, DESPITE BEING REQUIRED TO DO SO BY THE PLRA.

"The PLRA was intended to reduce the quantity and improve the quality of prisoner suits … It seeks to eliminate unwarranted interference with the administration of prisons by federal courts, and thus afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Hargrove v. Riley, No. 04-CV-4587, 2007 U.S. Dist. LEXIS 6899, at *18 (E.D.N.Y. Jan. 31, 2007) (internal citations and quotations omitted). To that end, the PLRA specifically requires an inmate to exhaust all administrative remedies that are available to him in the facility in which he is incarcerated prior to filing a civil suit in federal court regarding the conditions of his confinement. See 42 U.S.C. § 1997e(a) ("[n]o action shall be brought with respect to prison conditions under [Section 1983], or

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"). Exhaustion is required even when an inmate seeks a form of relief, such as monetary damages, that cannot be awarded by the grievance procedure of the facility in which he is incarcerated. See, e.g., Woodford v. Ngo, 548 U.S. 81, 85 (2006); Booth v. Churner, 532 U.S. 731, 740 (2001).

The PLRA's exhaustion requirement "'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" Hill v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)). Suits regarding conditions of confinement and medical needs fall within the scope of the PLRA. See, e.g., Orta v. N.Y.C. Dep't of Corr., No. 01 Civ. 10997, 2003 U.S. Dist. LEXIS 2682, at *4 (S.D.N.Y. Feb. 25, 2003).

To determine whether an inmate has exhausted his administrative remedies, courts in the Second Circuit typically evaluate three factors: (1) whether administrative remedies are "available" to the inmate, (2) whether the defendant is estopped from asserting an exhaustion defense, and (3) whether special circumstances exist that would excuse the inmate from fulfilling the exhaustion requirement. See Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004).[4] As discussed below, administrative remedies were readily available at AMKC, Defendants are not estopped from asserting an exhaustion defense, and there are no special circumstances that excuse Plaintiffs from the exhaustion requirement. Defendants should be granted summary judgment accordingly.

---

[4] The Second Circuit has expressly reserved the question of whether the three-factor Hemphill test remains viable in light of the Supreme Court's stringent interpretation of the PLRA's exhaustion requirement in Woodford. See Amador v. Andrews, 655 F.3d 89, 102 (2d Cir. 2011). This Court need not resolve this issue, however, as Plaintiffs' failure to exhaust is not excused even under the more forgiving Hemphill framework. See Mamon v. N.Y.C. Dep't of Corr., No. 10 Civ. 8055 (lead case), 2012 U.S. Dist. LEXIS 16519, at *12-13 (S.D.N.Y. Jan. 26, 2012).

A. **Administrative Remedies were Readily Available to Plaintiffs.**

When assessing availability, "[c]ourts should be careful to look at the applicable set of grievance procedures, whether city, state or federal." Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003). The DOC has an established administrative grievance process called the Inmate Grievance and Request Program ("IGRP"). (Defs' 56.1 ¶ 9; IGRP Directive, McMahon Decl., Exh. E). As set forth in the IGRP, "[a]ny inmate who is directly and personally affected by an issue, condition, practice, or action relating to the inmate's confinement" may file a grievance. (IGRP Directive, McMahon Decl., Exh. E at § II(A)). Thus, the issues Plaintiffs raise here are clearly covered under the IGRP.

In order to exhaust the DOC grievance process, inmates in DOC facilities are required to (1) file a grievance with the IGRP office; (2) appeal to the Inmate Grievance Review Committee ("IGRC") for a formal hearing if that grievance not resolved in a manner the inmate deems acceptable (or goes unanswered); (3) appeal to the facility's commanding officer if the inmate does not accept the outcome of the IGRC proceedings (or lack thereof), and (4) appeal to the DOC Central Office Review Committee ("CORC") if the inmate does not accept the commanding officer's disposition (or lack thereof). (Defs' 56.1 ¶¶ 11-13; IGRP Directive, McMahon Decl., Exh. E §§ IV(D)-(J)). The IGRP provides, and courts have emphasized, that in order to properly exhaust, inmates must pursue all levels of the administrative procedure, even when they do not receive a response to their initial grievance. IGRP Directive, McMahon Decl., Exh. E at § IV(D)(10)(a); Reuben v. N.Y.C. Dep't of Corr., No. 11 Civ. 378, 2011 U.S. Dist. LEXIS 122734, at *6 (S.D.N.Y. Oct. 18, 2011) ("A prisoner's remedies are not deemed exhausted until he proceeds through all . . . levels of the IG[R]P") (citations omitted).

Strict compliance with the IGRP is required, and simply engaging in the initial step of its multi-step administrative review—without taking any further action—does not satisfy

the PLRA's exhaustion requirement. See George v. Morrisson, No. 06 Civ. 3188, 2007 U.S. Dist. LEXIS 42640, at *14-15 (S.D.N.Y. June 11, 2007) (collecting cases). In cases where inmates use a form complaint containing a prompt asking them to describe all steps they have taken to appeal the result of an initial grievance, and the inmates fail to establish they have taken any such steps, then the exhaustion requirement cannot be said to be satisfied. See, e.g., Ghee v. Ramos, No. 13 Civ. 632, 2013 WL 7018543, at *1 (S.D.N.Y. Dec. 4, 2013) (dismissing case for failure to exhaust where inmate filed initial grievance, stated he received no response, but failed to complete the remainder of the form complaint directing him to describe the steps he took to proceed through the IGRP); Shamel v. Agro, No. 11 Civ. 9473, 2013 U.S. Dist. LEXIS 27336, at *15-17 (S.D.N.Y. Jan. 28, 2013) (collecting cases which held that an inmate who alleged completion of one step of the grievance process but did not reference any further pursuit of available appeals had not exhausted his administrative remedies), rep't & rec. adopted, 2013 U.S. Dist. LEXIS 26156 (Feb. 25, 2013); Banks v. Mental Health Clinicians, No. 11 Civ. 7848, 2012 U.S. Dist. LEXIS 176880, at *10-12 (S.D.N.Y. Dec. 11, 2012); Hallett v. Davis, No. 11 Civ. 4646, 2012 U.S. Dist. LEXIS 137819, at *15 (S.D.N.Y. Sept. 25, 2012); Rivera v. Anna M. Kross Ctr., No. 10 Civ. 8696, 2012 U.S. Dist. LEXIS 15126, at *11-15 (S.D.N.Y. Feb. 7, 2012).

Here, the record is clear that all thirteen Plaintiffs failed to exhaust their available administrative remedies. In seven out of the nine cases, Plaintiffs have alleged that they did not receive a response to their initial grievances and did not take any action to move forward after that lack of a response, despite the IGRP's clear provision of a remedy in that situation. See IGRP Directive, McMahon Decl., Exh. E § IV(10)(a); Defs' 56.1 ¶¶ 14, 17.

In the remaining two cases (*Sanchez* and *Session*), Plaintiffs admittedly never filed any grievances. Mr. Sanchez alleges that he did not file a grievance because "[t]he people

that did file grievances never got a respond [*sic*]." See Sanchez Compl., McMahon Decl., Exh. B at ¶ IV. But an inmate's "perception that the [facility's] grievance program was ineffective or that the filing of grievances was futile is insufficient to negate the PLRA's exhaustion requirement." Shariff v. Coombe, 655 F. Supp. 2d 274, 286 (S.D.N.Y. 2009); see also Giano v. Goord, 250 F.3d 146, 150-51 (2d Cir. 2001). As for the *Session* Plaintiffs, they allege that no grievance procedure was available to them in AMKC.[5] See Session Compl., McMahon Decl., Exh. C at ¶ IV. The *Session* Plaintiffs' position here is objectively unreasonable given the fact that the *Bolton* and *Spurgeon* Plaintiffs were all able to access the grievance process at AMKC. See Hargrove, 2007 U.S. Dist LEXIS 6899, at *28 ("The test for assessing availability [of administrative remedies] is an 'objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available'") (quoting Hemphill, 380 F.3d at 688). Furthermore, to the extent that the *Session* Plaintiffs really were not aware of a formal grievance process at AMKC, that would not excuse them from failure to exhaust here where they never inquired about a grievance procedure and where the IGRP was clear. See Martin v. City of New York, No. 11 Civ. 600, 2012 U.S. Dist. LEXIS 56632, at *17 (S.D.N.Y. Apr. 19, 2012) (holding that, even where a Plaintiff alleged that "the grievance procedures and operations were never active" in a DOC facility, his failure to assert that he so much as inquired as to how to begin the

[5] The *Session* Plaintiffs go on to assert that "due to the seriousness of the allegations," they sought relief "outside the facility" through the Prisoner's Rights Project and through their colleague Mr. McNair, who they allege sent a letter to the Commissioner, Dora Shriro on June 25, 2013 (prior to the incidents complained of in the present suit.) Defendants do not concede the truth of these statements. That said, for purposes of summary judgment, these allegations are immaterial since neither of these actions can reasonably construed as compliance with the grievance procedure. The IGRP directs that all grievances must be filed in an individual capacity (IGRP Directive, McMahon Decl., Exh. E. § IIB) and so Mr. McNair was not permitted to file grievances on behalf of the Session Plaintiffs. Furthermore, Mr. McNair's letter, dated prior to the lockdowns at issue, cannot be construed to cover allegations in the Session case.

IGRP process, taken together with the IGRP itself, was sufficient to conclude that administrative remedies were available).

Accordingly, because all thirteen Plaintiffs failed to exhaust their readily-available administrative remedies, the Court should grant summary judgment for Defendants.

**B. Defendants are not Estopped from Asserting an Exhaustion Defense.**

In applying the second factor of the Second Circuit's Hemphill test, courts have held that a defendant can be estopped from asserting an affirmative defense of exhaustion of administrative remedies where the defense is not timely raised or the defendant takes some action to inhibit an inmate from exhausting his administrative remedies, such as threatening an inmate with retaliation or taking other affirmative steps to prevent the inmate from exhausting. See, e.g., Ruggiero v. Cnty. of Orange, 467 F.3d 170, 178 (2d Cir. 2006); Hernandez v. Coffey, No. 99 Civ. 11615, 2006 U.S. Dist. LEXIS 52066, at *10-11 (S.D.N.Y. July 26, 2006), vacated on other grounds, 582 F.3d 303 (2d Cir. 2009). Defendants timely raised the defense of failure to exhaust in their Rule 12(b)(6) motion to dismiss the complaint, after which Defendants were directed by the Court to renew the argument in a motion for summary judgment; as such, there can be no suggestion that Defendants have waived this defense and should be estopped from asserting it now under Hemphill. In addition, there is nothing in the record to indicate that Defendants took any actions to inhibit Plaintiffs from pursuing grievances. In fact, the *Spurgeon* and *Green* Plaintiffs admit that Deputy Margarita instructed them to file a grievance when they "questioned" her about their alleged lack of access to medication. (Spurgeon and Green Compls, McMahon Decl, Exh. D, ¶ IID). Accordingly, Defendants are not estopped from asserting failure to exhaust administrative remedies as a defense under the second factor of the Hemphill test.

**C. There are no Special Circumstances Excusing Plaintiffs from the Exhaustion Requirement.**

Under the third factor of the Hemphill test, courts consider whether there are special circumstances alleged by an inmate that would justify his "failure to comply with administrative procedural requirements." See 380 F.3d at 686. Here, there is nothing in the record to suggest that any special circumstances prevented Plaintiffs from complying with the grievance procedure. As already discussed above, in seven out of nine cases, Plaintiffs began the grievance procedure but then simply abandoned it pursuit of a federal remedy. In the other two cases—*Sanchez* and *Session*—Plaintiffs did not file grievances because they either believed doing so would be futile or they were allegedly unaware AMKC had a grievance procedure. These are not the sort of "special circumstances" that courts have recognized as excusing a prisoner's failure to exhaust. See Hargrove, 2007 U.S. Dist. LEXIS 6899, at *33-34 (citing to Giano v. Goord, 380 F.3d 670, 676 (2d Cir. 2004) and its progeny as holding that a prisoner's reasonable interpretation of a regulation could constitute "special circumstances" excusing his failure to file a formal grievance in a specific circumstance where he had nonetheless raised his concerns in an appeal to a disciplinary proceeding.) Because the record is devoid of any "special circumstances" that would have justified Plaintiffs' failure to exhaust the grievance procedures available to them, the Court should grant Defendants summary judgment as a matter of law.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that their motion for summary judgment be granted, with prejudice, and that Defendants be granted such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 14, 2014

ZACHARY W. CARTER
Acting Corporation Counsel
of the City of New York
*Attorney for Defendants*
100 Church Street, Room 2-191
New York, N.Y. 10007
Tel: (212) 356-2649
Fax: (212) 788-3770
kmcmahon@law.nyc.gov

By: s/
Kate McMahon (KM3229)
Assistant Corporation Counsel